UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | No. 22-20200 |
| Plaintiff, | Hon. Mark A. Goldsmith |
| v. | Offense:18 U.S.C. § 371 |
| Nagi Abdelsyed | Maximum Sentence: |
| Defendant. | 18 U.S.C. § 371: 5 years / $250,000 fine or twice the gain/loss |

### THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum pertaining to Defendant Nagi Abdelsayed ("Abdelsayed").[1]  The United States respectfully requests that the Court: (1) impose a sentence of 20 months' imprisonment; (2) order Abdelsayed to pay restitution in the amount of $274,821.96; (3) order a special assessment of $100.00; and (4) order a three-year term of supervised release.

---

[1] The parties have acknowledged that the defendant's name is misspelled in the caption, but that the defendant is the person named in Count 1 of the Amended Indictment.

## **Background**

On September 22, 2023, Abdelsayed pleaded guilty pursuant to a Rule 11 Plea Agreement to Count 1 of the Indictment: Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks, 18 U.S.C. § 371.

Beginning in April 2020 and continuing through at least April 2021, Abdelsayed conspired with Ali Saad, Kurt Schroeder, Sharif Khalil, and others to defraud the United States and pay and receive kickbacks in exchange for Medicare beneficiary information and completed requisition orders for comprehensive urine drug testing. Abdelsayed was the owner of Spectra Clinical Labs ("SCL"). He turned over control of SCL to Sherif Khalil in 2014, and was aware that Khalil was using SCL to pay kickbacks to recruiters, including Ali Saad and Kurt Schroeder, in exchange for the referral of urine samples and physician orders to Spectra. Prior to Khalil's involvement at SCL, SCL was exclusively a blood testing lab. Khalil changed the business model to focus on urine drug testing because he believed it would be more lucrative, particularly if the urine drug testing was billed at the highest level of reimbursement available. Specifically, Khalil's scheme involved obtaining urine drug testing requisition orders from a variety of doctors' offices, which SCL then billed to Medicare using the code (G0483) for the highest level of drug testing available, which received the highest reimbursements from Medicare.

Abdelsayed resumed operational control of Spectra in approximately April 2020 and made illegal kickback payments to Ali Saad and Kurt Schroeder in exchange for the referral of urine samples and orders to Spectra. Specifically, Abdelsayed participated in a conspiracy to pay kickbacks to marketers who used their access to doctors' offices to obtain orders for the highest-level of urinary drug testing available, regardless of medical need or the doctors' actual desire for such testing. In many instances, the recruiters (motived by the high level of kickbacks they were receiving from Spectra), subverted the medical decisions of the doctors, including by paying bribes to office staff, providing false training to office staff, and in Kurt Schroeder's instance, wholesale use of a physician's signature stamp without that physician's knowledge or permission.

These samples/orders were then billed to Medicare. In one instance, on June 12, 2020, Abdelsayed paid Saad $5,000 via check for the referral of urine samples and physician orders. Abdelsayed also wired $180,000 to Schroeder between April 2020 and April 2021 in exchange for the referral of urine samples and physician orders. Nearly all of these orders from Schroeder were for "comprehensive" urine drug testing. As a result of the kickbacks paid by Abdelsayed to Saad and Schroeder, and the subsequent claims to Medicare generated by those kickbacks, SCL was paid approximately $274,821.96.

Throughout all relevant periods, Abelsayed falsely certified to Medicare in enrollment forms that he was the sole owner and operator of SCL, when in fact Sherif Khalil was involved in operational control of SCL and acting as a managing employee. These same enrollment documents certified that all the statements therein were true and accurate, and certified that the signor understood and agreed to abide by Medicare laws, regulations, and program instructions, including the Federal anti-kickback statute). Abdelsayed made these certifications to Medicare in order to gain access to the Medicare trust program, and then used that position of trust to violate the law with Kurt Schroeder, Sherif Khalil, Ali Saad, and others.

## Procedural History

On April 12, 2022, an indictment charged Abdelsayed with one count of conspiracy to defraud the United States and pay and receive health care kickbacks, 18 U.S.C. § 371. On September 22, 2023, Abdelsayed pleaded guilty to this charge. Abdelsayed has remained on bond ever since.

## Sentencing Factors

18 U.S.C. § 3553(a) provides numerous factors for the Court to consider in sentencing a defendant. Factors pertinent to the instant offense are discussed below, numbered as they are in § 3553(a).

### (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

### (A) Nature and circumstances of the offense

Abdelsayed's crime was serious. He remained the titular owner and manager of SCL yet allowed Khalil to conceal his involvement with SCL and use it to pay marketers to obtain fraudulent orders for comprehensive urine drug testing, which were then billed to Medicare. Abdelsayed was aware of Khalil's actions but did nothing to stop them despite being the individual named on all enrollment forms with Medicare. Then, Abdelsayed involved himself by directly paying patient marketers in violation of the law. Abdelsayed abused his position of trust with Medicare to obtain Medicare funds and paid illegal kickbacks to Ali Saad and Kurt Schroeder. In many instances, the services ultimately billed to Medicare were medically unnecessary, not eligible for reimbursement, or not ordered by a doctor in the first place.

### (B) The history and characteristics of the defendant

Abdelsayed was born in Egypt and immigrated to the United States in his thirties. PSR at ¶ 45. Although he arrived in the United States with no financial resources to speak of, by 1992 he founded SCL, a blood-testing medical laboratory. He remained involved in some manner with SCL, either as owner and managing employee, or as titular owner, from 1992 through 2021. Despite his obvious ability

5

to earn an income in law-abiding ways, Abdelsayed nevertheless engaged in a criminal conspiracy designed to further enrich himself and his business partner, Sharif Khalil.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with appropriate education, vocational training, or medical care**

Health care fraud is a serious problem nationwide, and particularly so in the Eastern District of Michigan. The National Health Care Anti-fraud Association, an organization composed of both public and private health insurers and regulators, conservatively estimates that three percent of all health care spending in the United States is lost due to fraud. By paying kickbacks and bribes to marketers in exchange for Medicare beneficiary information and doctors' orders for comprehensive urine drug testing, and then subsequently sending claims to Medicare for these same tests, that were not medically necessary, not ordered by a doctor, and acquired through kickbacks, (causing Medicare to pay approximately $274,821.96), Abdelsayed contributed to and worsened that plague. Medicare is a trust-based system — and when providers pay kickbacks to recruiters in exchange for payments, it subverts patient choice and degrades that trust. This is particularly the case where, as here,

the recruiters were incentivized to circumvent medical decision making and obtain the most expensive tests no matter the cost and heedless of medical need.

Abdelsayed's punishment should take into account not only the scope and seriousness of his own criminal conduct, but also the need to deter others from engaging in these types of schemes. The Sixth Circuit Court of Appeals has emphasized that "economic and fraud-based crimes . . . are prime candidates for general deterrence" because these crimes "are more rational, cool, and calculated than sudden crimes of passion or opportunity." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (*quoting United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). This is particularly the case for defendants like Abdelsayed, who choose to engage in fraud despite possessing ample means to provide a comfortable lifestyle for themselves and their families through gainful employment.

All of the money involved in the charged scheme came from the Medicare program. That program, funded by American taxpayers, is a public trust intended to provide health insurance for the elderly and disabled. Every dollar that Abdelsayed helped divert from this program—to himself and others—is a dollar that could and should have been used to pay for treatment, medications, and supplies that Medicare beneficiaries actually needed. Accordingly, the United States respectfully requests that Abdelsayed's punishment reflect the need to promote respect for the laws that

protect the public and guard against fraud, especially as it relates to healthcare fraud and healthcare kickbacks.

A further variance from the government's recommended sentence is not appropriate here.

**(3) The kinds of sentences available**

Under 18 U.S.C. § 371, the maximum sentence is five years' imprisonment and the maximum fine is $250,000 or twice the gain/loss.

**(4) The sentencing range established by the U.S.S.G.**

The parties agree regarding the following base offense level and enhancements, resulting in a sentencing guidelines range of 24-30 months' imprisonment. *See* Plea Agreement (ECF No. 101, PageID.410-11).

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. §2B4.1(a)] |
| Intended Loss > $3,500,000: | +12 | [U.S.S.G. § 2B1.1(b)(1)((G)] |
| Abuse of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility: | –3 | [U.S.S.G. § 3E1.1] |
| Zero Point Offender | -2 | [U.S.S.G. § 4C1.1(a) |

As a result of this calculation, Abdelsayed's Total Offense Level is 17. Coupled with his Criminal History score of 0, he is in Criminal History Category I, with a resulting Guideline range of 24-30 months' imprisonment. The government

recommends that the Court impose a sentence of 20 months' imprisonment.

**(5)   Any pertinent policy statement issued by the United States Sentencing Commission ("U.S.S.C.")**

The United States is unaware of any pertinent policy statements issued by the U.S.S.C. However, the Patient Protection and Affordable Care Act ("PPACA"), enacted in March 2010, provides the most recent evidence of congressional intent in this area of the law. PPACA specifically provides for increased sentences for health care fraud offenses, and further requires the U.S.S.C. to "ensure that the Federal Sentencing Guidelines and policy statements - (i) reflect the serious harms associated with health care fraud and the need for aggressive and appropriate law enforcement action to prevent such fraud; and (ii) provide increased penalties for persons convicted of health care fraud offenses in appropriate circumstances." Pub. L. No. 111-148, § 10606(a)(3).

**(6)   The need to avoid unwarranted sentencing disparities among defendants with similar records**

This sentencing factor is intended to address national sentencing disparities, and it is widely recognized that a Guidelines sentence is the best way to avoid such disparities. *See United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014) (stating that "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the

9

Guidelines, the Guidelines themselves represent the best indication of national sentencing practices"); *Rita v. United States*, 551 U.S. 338 (2007). "One of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes." *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) Abdelsayed's Guidelines range takes into account the specific characteristics of his offense. The Probation Department has not identified any factors that warrant a departure from the applicable sentencing guideline range.   PSR ¶ 89.

## Conclusion

Based upon the considerations set forth above, the United States respectfully recommends that the Court:  (1) impose a sentence of 20 months' imprisonment; (2) order Abdelsayed to pay restitution in the amount of $274,821.96; (3) order a special assessment of $100.00; and (4) order a three-year term of supervised release.

        Respectfully submitted,

        JEROME F. GORGON, JR
        United States Attorney

        LORINDA LARYEA
        Acting Chief
        U.S. Department of Justice
        Criminal Division, Fraud Section

        *s/ Jeffrey A. Crapko*
        Jeffrey A. Crapko
        U.S. Department of Justice
        Criminal Division, Fraud Section
        211 W. Fort Street, Suite 2001
        Detroit, MI  48226-3211
        Phone:  (202) 445-9832
        Email:  Jeffrey.Crapko@usdoj.gov

Date:  June 6, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel for Defendant.

Date: June 6, 2025

>*s/ Jeffrey A. Crapko*
>Jeffrey A. Crapko
>U.S. Dept. of Justice
>211 W. Fort Street, Suite 2001
>Detroit, MI  48226-3211
>(202) 445-9832
>Jeffrey.Crapko@usdoj.gov